# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2476

_____

| | | |
|---|---|---|
| In re: Gary Wayne Colsen, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| | * | |
| _____ | * | |
| | * | |
| | * | |
| Gary Wayne Colsen, | * | Appeal from the United States |
| | * | Bankruptcy Appellate Panel |
| Appellee, | * | for the Eighth Circuit. |
| | * | |
| v. | * | |
| | * | |
| United States of America, | * | |
| (Internal Revenue Service), | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 17, 2006
Filed: May 4, 2006

_____

Before WOLLMAN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The United States appeals the order of the bankruptcy appellate panel[1] affirming a judgment of the bankruptcy court,[2] which held that Gary Wayne Colsen's debts to the IRS were dischargeable. *In re Colsen*, 322 B.R. 118 (B.A.P. 8th Cir. 2005), *aff'g*, 311 B.R. 765 (Bankr. N.D. Iowa 2004). We affirm.

After Mr. Colsen failed to file timely tax returns for the years 1992 through 1996, the IRS prepared substitutes for the missing returns and issued notices of deficiency. By the middle of 1999, the IRS had assessed taxes, interest, and penalties against Mr. Colsen for the tax years 1992 through 1996. In late 1999, Mr. Colsen filed 1040 forms for 1992 through 1998, and four years later he filed a petition for relief under Chapter 7 of the Bankruptcy Code. He then initiated an adversary proceeding claiming that his federal income tax liabilities for tax years 1992 through 1996 were dischargeable despite 11 U.S.C. §523(a)(1)(B)(i). That statute provides that "[a] discharge ... does not discharge an individual debtor from any debt ... for a tax ... with respect to which a return, or equivalent report or notice, if required ... was not filed or given." The United States moved for summary judgment, asserting that the 1040 forms that Mr. Colsen filed were not "returns" under the statute because they were filed after the IRS's assessment had taken place. The bankruptcy court disagreed and held that the 1040 forms qualified as returns and therefore Mr. Colsen's tax liabilities from 1992 through 1996 were dischargeable; the bankruptcy appellate panel affirmed.

---

[1]The Honorable Barry S. Schermer, The Honorable Arthur B. Federman, and The Honorable Jerry W. Venters, Bankruptcy Appellate Panel, Eighth Circuit. Judge Schermer wrote the opinion for the panel.

[2]The Honorable William L. Edmonds, United States Bankruptcy Judge for the Northern District of Iowa.

We review the bankruptcy court's interpretation of the bankruptcy code *de novo*. *In re Kolich*, 328 F.3d 406, 407 (8th Cir. 2003). Although §523(a)(1)(B)(i) states that tax liabilities are excepted from discharge in bankruptcy if a required return was not filed, the code in effect at the relevant time did not define "return." (In 2005, Congress added a provision to § 523(a), which states that "the term 'return' means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements)." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8 § 714 (April 20, 2005), 11 U.S.C. § 523(a). But we do not apply that language here because Mr. Colsen's bankruptcy petition was filed before the Act's effective date. *See* Pub.L. No. 109-8 § 1501, 19 Stat. 23, 216; *In re Nichols*, 440 F.3d 850, 857 n.6 (6th Cir. 2006); *In re Payne*, 431 F.3d 1055, 1060 (7th Cir. 2005) (Easterbrook, J., dissenting).)

Both parties agree that the appropriate criteria for determining whether a document is a return for present purposes are summarized in *Beard v. Commissioner*, 82 T.C. 766, 774-79 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986) (per curiam), which itself drew from the Supreme Court's opinions in *Germantown Trust Co. v. Commissioner*, 309 U.S. 304, 309 (1940), and *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934). According to the tax court in *Beard*, if a document "contains sufficient information to permit a tax to be calculated," and " 'purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law,' " it is a return. *Beard*, 82 T.C. at 777, 778 (quoting *Zellerbach*, 293 U.S. at 180 (internal citation omitted)).

The United States asserts that a 1040 form filed after the IRS has gone to the trouble and expense of preparing substitute returns and assessing the relevant tax liability serves no purpose under the tax laws and thus cannot have been an "honest and genuine endeavor" to satisfy the tax laws as *Beard* requires. The Sixth Circuit has ruled for the government in a similar situation, holding that "when the debtor has failed to respond to both the thirty-day and the ninety-day deficiency letters sent by

-3-

the IRS, and the government has assessed the deficiency, then the Forms 1040 serve no tax purpose, and the government has met its burden of showing that the debtor's actions were not an honest and reasonable effort to satisfy the tax law." *Hindenlang v. United States* (*In re Hindenlang*), 164 F.3d 1029, 1034-35 (6th Cir. 1999), *cert. denied*, 528 U.S. 810 (1999).

Along similar lines, the Fourth Circuit held that a debtor's tardiness is relevant to the question of whether a 1040 form should be considered an honest and genuine attempt to comply with the tax laws, and decided that a purported return filed by a nonchalantly noncompliant debtor after the IRS estimated his tax liability did not meet the requirements of *Beard*. *Moroney v. United States* (*In re Moroney*), 352 F.3d 902, 906 (4th Cir. 2003). The court in *Moroney* explicitly refused to hold that 1040 forms serve a tax purpose if they cause an abatement of a debtor's estimated tax liabilities, since that would mean that "the availability of discharge would turn on the IRS's accuracy in assessing taxes, rather than on [the debtor's] sincerity and diligence in complying with the tax code." *Id.* The court further reasoned that the IRS would be discouraged from abating taxes if doing so meant that the tax liabilities would be eligible for discharge in bankruptcy. *Id.*

The Seventh Circuit has also refused to recognize a post-assessment filing as a return for purposes of §523(a)(1)(B)(i). *See Payne*, 431 F.3d at 1057. In his opinion for the court, Judge Posner asserted that the main purpose of the filing requirement is to spare the government the burden of calculating what tax is owed. *Id.* He concluded that since the debtor filed a purported return only after the IRS made an assessment, the document was not a reasonable attempt to comply with the tax law "requirements of filing a timely return and paying the amount of tax calculated on the return" and thus was not a return under §523(a)(1)(B)(i), whether or not it yielded useful information. *Id.* Judge Easterbrook, however, dissented from this view: He pointed out that "timely filing and satisfaction of one's financial obligations are requirements distinct from the definition of a 'return' " and argued that the relevant legal provisions

were the ones that require that taxpayers yield all financial information necessary for calculation of their tax liabilities. *Id.* at 1060-61 (Easterbrook, J., dissenting); *see* 26 U.S.C. §§ 6011(a), 6012(a). The court, he contended, had conflated the objectives of obtaining accurate financial data and maximizing tax revenues, and had insinuated a motive requirement into the definition of "return" that the cases used to formulate that definition do not support. "Motive may affect the *consequences* of a return," Judge Easterbrook said, "but not the definition." *Payne*, 431 F.3d at 1061-62 (Easterbrook, J., dissenting). With due regard to the opinions of the other circuits, we find Judge Easterbrook's arguments persuasive.

To be a return, a form is required to "evince" an honest and genuine attempt to satisfy the laws. This does not require inquiry into the circumstances under which a document was filed. The Supreme Court has observed that even admittedly fraudulent returns can be returns under the tax laws, if they "appeared on their faces to constitute endeavors to satisfy the law." *Badaracco v. Commissioner*, 464 U.S. 386, 397 (1984). That case dealt only with defining returns for purposes of the statute of limitations; neither party denied that a fraudulent filing that actively hindered calculation of accurate tax liability was considered a return under numerous sections of the tax code. *Id.* at 396-97. The Supreme Court's objective assessment in *Badaracco* is compatible with the requirements of *Beard*; the fourth *Beard* criterion contains no mention of timeliness or the filer's intent. We have been offered no persuasive reason to create a more subjective definition of "return" that is dependent on the facts and circumstances of a taxpayer's filing. We think that to do so would increase the difficulty of administration and introduce an inconsistency into the terminology of the tax laws. We therefore hold that the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it. The filer's subjective intent is irrelevant.

The government's essential position is that because Mr. Colsen's 1040 forms were filed after the IRS's assessment, they do not evince an honest, genuine attempt

to satisfy the law and thus he has not satisfied the requirement that returns be filed in order for tax liabilities to be dischargeable. But we have no evidence to suggest that the forms appeared obviously inaccurate or fabricated; indeed, Mr. Colsen's 1040 forms contained data that allowed the IRS to calculate his tax obligation more accurately: The information contained in the forms was honest and genuine enough to result in thousands of dollars of abatements of tax and interest. This contrasts, incidentally, with the situation in *Hindenlang*, 164 F.3d at 1031, where the taxpayer's forms contained essentially the same information as the substitute forms that the IRS prepared and the calculation of tax did not change substantially.

The IRS apparently has found post-assessment returns useful, as it has required taxpayers to file them before the agency would consider proposed offers to compromise tax liabilities. *See Payne*, 431 F.3d at 1060. Filing the forms served an important purpose under the tax laws for Mr. Colsen. That the IRS did not also collect more tax as a result of Mr. Colsen's filings does not undermine their role in determining Mr. Colsen's ultimate liabilities. The theory of the case that the government espouses holds only if we consider the accurate calculation of a taxpayer's obligations not to be a valid purpose that satisfies the tax laws, which we decline to do. Our confidence in this result derives strength from the principle that "exceptions from discharge are to be strictly construed so as to give maximum effect to the policy of the bankruptcy code to provide debtors with a 'fresh start.' " *In re Geiger*, 113 F.3d 848, 853 (8th Cir. 1997) (en banc), *aff'd sub nom. Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

We affirm the judgment of the bankruptcy appellate panel.

_____