[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10273
_____

D.C. Docket Nos. 3:14-cv-00677-BJD; 3:12-ap-00691-JAF


In re: CHRISTOPHER MICHAEL JUSTICE,

                                                        Debtor.

-------------------------------------------------------------------------------------------------

CHRISTOPHER MICHAEL JUSTICE,

                                                        Plaintiff-Appellant,


                versus


UNITED STATES OF AMERICA,
Treasury Department, Internal Revenue Service,


                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 30, 2016)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The issue in this case is whether the Forms 1040 belatedly filed by Plaintiff-Appellant Christopher Michael Justice ("Justice") for the tax years 2000 through 2003 constitute "returns" for purposes of 11 U.S.C. § 523(a) relating to the dischargeability *vel non* of tax debts. Justice declared bankruptcy in 2011 and sought to discharge his federal income tax liability for tax years 2000 through 2003. Justice had filed Forms 1040 for those tax years many years late, and only after the Internal Revenue Service ("IRS") had issued notices of deficiency and had assessed the amount of taxes he owed.  The United States Bankruptcy Court for the Middle District of Florida determined that Justice's tax debts were non-dischargeable and granted the United States of America's motion for summary judgment. Justice appealed to the district court, which affirmed.

The criteria for a document to qualify as a tax return are set out in the Beard test articulated by the United States Tax Court in 1984. Beard v. Comm'r of Internal Revenue, 82 T.C. 766, 777 (1984), aff'd sub nom. Beard v. C.I.R., 793 F.2d 139 (6th Cir. 1986). The Beard test was derived from the Supreme Court opinions in Zellerbach Paper Company v. Helvering, 293 U.S. 172, 180, 55 S. Ct. 127 (1934) and Germantown Trust Co. v. Commissioner of Internal Revenue, 309 U.S. 304, 306-09, 60 S. Ct. 566, 567-69 (1940). It establishes four requirements for

2

a document to serve as a tax return: (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. See In re Hindenlang, 164 F.3d 1029, 1033 (6th Cir. 1999). Only the fourth[1] prong of the Beard test is at issue in this case: whether Justice's Forms 1040 represented an honest and reasonable effort to comply with the tax law.

At least three[2] other circuit courts have held that delinquency in filing is relevant to the fourth Beard factor. See In re Payne, 431 F.3d 1055, 1057 (7th Cir. 2005) (holding that the debtor's "belated filing was not a reasonable effort to satisfy the requirements of the tax law," relying significantly on the debtor's delinquency in failing to file his tax returns until after the IRS assessment, thus

---

[1]    We note that this was actually the *third* prong of the original Beard and Zellerbach tests. See Zellerbach, 293 U.S. at 180, 55 S. Ct. at 131; Beard, 82 T.C. at 777. However, the Sixth Circuit in Hindenlang altered the order of the factors, and since then appeals courts have consistently adopted the Sixth Circuit's ordering. See, e.g., Hindenlang, 164 F.3d at 1033-34; In re Payne, 431 F.3d 1055, 1057 (7th Cir. 2005); In re Hatton, 220 F.3d 1057, 1060-61 (9th Cir. 2000). The Seventh Circuit actually referred to this factor as "the fourth element of Zellerbach." Payne, 431 F.3d at 1061. But the Zellerbach test included only three factors. Zellerbach, 293 U.S. at 180, 55 S. Ct. at 131 (A document qualifies as a return "if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law."). In this opinion, we refer to the "honest reasonable" factor as the fourth prong.

[2]    The Ninth Circuit also reached a similar conclusion in Hatton. 220 F.3d at 1061. However, Hatton involved a taxpayer who never filed a purported return at all and instead accepted the IRS's assessment of his tax debts. Although the Ninth Circuit's reasoning was similar to that of the Fourth, Sixth, and Seventh Circuits, Hatton is not directly on point. Hatton did, however, indicate that a taxpayer's delinquency is relevant to the fourth Beard factor.

"defeating the main purpose" of the self-reporting requirement of our tax system);

In re Moroney, 352 F.3d 902, 906 (4th Cir. 2003) (holding that "a debtor's

delinquency is relevant to determining whether the debtor has filed a return," and

holding that failing to file until after IRS assessment undermines the self-reporting,

self-assessment essence of our tax system, and is "hardly how honest and

reasonable taxpayers attempt to comply with the tax code"); Hindenlang, 164 F.3d

at 1034-35 (holding that the government had met its burden of proving that

debtor's actions were not an honest and reasonable effort to satisfy the tax law

when the debtor failed to file a timely return, failed to respond to the thirty-day

letter and the ninety-day letter, and belatedly filed the Forms 1040 only after the

IRS assessed the taxes).

In this case, Justice failed to file timely tax returns for tax years 2000

through 2003. As a result, the IRS attempted to determine Justice's liability for

those years using third-party information. The IRS's estimates of tax liability for a

taxpayer who has failed to file a return are known as Substitute for Return ("SFR")

tax assessments. Once it had prepared the SFRs, the IRS issued Justice notices of

deficiency for all four tax years. Justice did not challenge the notices of deficiency

in the Tax Court, so on August 28, 2006, the IRS assessed tax deficiencies against

Justice in the amounts it had determined through the SFRs.

4

On October 22, 2007, after the IRS had issued notices of deficiency to him and assessed his liability, Justice prepared Forms 1040 for all four tax years and delivered them to the IRS. The forms were tendered between three (for the 2003 tax year) and six (for the 2000 tax year) years late. For each tax year, Justice reported a lower tax liability than the IRS had assessed in the SFRs. The IRS reviewed Justice's Forms 1040 and abated a portion of the tax it had assessed against him for each year. Justice has not offered any excuse or explanation for his tardiness in filing his tax returns.

Justice filed a voluntary petition for Chapter 7 bankruptcy on July 22, 2011. He received a Discharge of Debtor on November 4, 2011. On January 10, 2012, his attorney filed an administrative claim with the IRS requesting a write-off for Justice's tax debts for years 2000 through 2003. The IRS denied the request, and this lawsuit followed.

The law restricts the circumstances under which tax debts may be discharged in bankruptcy. Specifically, a bankruptcy discharge does not relieve a debtor from any debt

> (1) for a tax or a customs duty—
>> (B) with respect to which a return, or equivalent report or notice, if required—
>>> (i) was not filed or given; or
>>> (ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition . . . .

5

11 U.S.C. § 523(a). It is undisputed that Justice filed his Forms 1040 after the dates on which they were last due and at least two years before filing his bankruptcy petition. As a result, if Justice's Forms 1040 constitute tax returns, his tax debts are not excluded from discharge under § 523(a)(1)(B)(ii).[3] If, however, the Forms 1040 do not qualify as "returns" at all, then Justice's tax debts are non-dischargeable under § 523(a)(1)(B)(i)—i.e., Justice is deemed never to have filed "returns." The issue in this case is whether the Forms 1040 that Justice belatedly filed constitute "returns" for purposes of § 523(a)(1)(B)(i).

Until 2005, the bankruptcy code did not include any language defining "return." The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005 added, for the first time, a definition of "return" to the bankruptcy code. That definition reads:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or a similar State or local law.

---

[3]     In other words, under § 523(a)(1)(B)(ii) a tax debt is non-dischargeable *only* if the return is *both* filed late *and also* filed within two years of filing for bankruptcy. See In re Moroney, 352 F.3d 902, 904-05 n.1 (4th Cir. 2003). Because the belated Forms 1040 filed by Justice in 2007 were not filed within two years of his bankruptcy filing in 2011, his tax debts are not excluded from discharge pursuant to § 523(a)(1)(B)(ii).

11 U.S.C. § 523(*) (herein referred to as the "hanging paragraph" and cited as § 523(*)).[4]

Three of our sister circuits – the First, Fifth, and Tenth Circuits – have interpreted this definition in a manner that we need not address in this opinion. Those courts decided that the phrase "applicable filing requirements" in the BAPCPA definition includes filing deadlines. Therefore, those courts held, late-filed tax documents do not comply with applicable filing requirements and cannot be "returns." This approach has been termed the "one-day-late rule" because it prohibits discharge of a tax debt with respect to which a return was filed even one day late. In these "one-day-late" jurisdictions, there are only the narrow statutory exceptions to the "one-day-late rule," e.g., late-filed documents that qualify as returns under this interpretation are those filed in accordance with § 6020(a) of the Internal Revenue Code of 1986.[5] See In re Fahey, 779 F.3d 1, 4 (1st Cir. 2015) ("So the question is whether timely filing is a 'filing requirement' . . . The answer

---

[4] This definition of the term "return" appears at the end of subsection (a) of § 523. Because it is unattached to any lettered subsection of § 523, it is often cited as § 523(*) and referred to as the "hanging paragraph" or the "flush language." See, e.g., In re Mallo, 774 F.3d 1313, 1318 (10th Cir. 2014).

[5] Explicitly included as a return under the hanging paragraph is "a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986 . . . ." 11 U.S.C. § 523(*). Section 6020(a) of the Internal Revenue Code permits the IRS, when a taxpayer has failed to file a return, to cooperate with the taxpayer to produce one. The IRS informs us that § 6020(a) returns represent "only a tiny minority of cases."

is plainly yes."); In re Mallo, 774 F.3d 1313 (10th Cir. 2014), cert. denied sub

nom. Mallo v. I.R.S., 135 S. Ct. 2889 (2015); In re McCoy, 666 F.3d 924, 932 (5th

Cir. 2012) ("Unless it is filed under a 'safe harbor' provision similar to § 6020(a), a

state income tax return that is filed late under the applicable nonbankruptcy state

law is not a 'return' for bankruptcy discharge purposes under § 523(a).").

Partly because the one-day-late rule limits the application of

§ 523(a)(1)(B)(ii) to the unusual situations in which the IRS prepares a return with

the taxpayer's cooperation under § 6020(a), both Justice and the IRS argue that the

rule is an incorrect interpretation of the statute. However, we hold that, even under

Justice's preferred interpretation of § 523(*), his tax debts are non-dischargeable.

We can assume *arguendo*, although we expressly do not decide,[6] that the one-day-

late rule is incorrect. We can do this because, even under this assumption, Justice's

tax debts are nevertheless non-dischargeable for the following reasons.

Thus, we assume *arguendo* that the applicable filing requirements Congress

envisioned in the hanging paragraph do not include filing deadlines. Even if late-

filed tax documents can sometimes qualify as returns, the BAPCPA definition also

demands that a return satisfy "the requirements of applicable nonbankruptcy law."

---

[6]    The IRS also proposes an alternative rule, under which a tax document filed after the IRS
has conducted an independent assessment of the taxpayer's liability is not a return with respect to
the portion of the liability the IRS has already assessed (though it may be a return for additional
taxes owed). For the same reasons, we also need not decide whether the IRS's preferred
approach is correct.

Both parties to this case, and all courts to consider the issue, agree that the term "applicable nonbankruptcy law" incorporates the Beard test. See, e.g., In re Martin, 500 B.R. 1, 8 (D. Colo. 2013) aff'd sub nom. In re Mallo, 774 F.3d 1313 (10th Cir. 2014) (holding that the Beard test "constituted the 'applicable nonbankruptcy law' – pursuant to the first sentence of the hanging paragraph provided by the BAPCPA – for purposes of determining whether a filing is a 'return' under § 523(a)(1)(B)(i)"); In re Rhodes, 498 B.R. 357, 367 (Bankr. N.D. Ga. 2013) (applying Beard test "to determine whether a late-filed, post-assessment return is, in fact, a 'return' for purposes of dischargeability considerations under clause (i) of § 523(a)(1)(B)"); cf. In re Casano, 473 B.R. 504, 507 (Bankr. E.D.N.Y. 2012) (declining to apply Beard test because the one-day-late rule meant that late tax filings could never be returns, and therefore declining to apply any "applicable nonbankruptcy law" at all).

Only the fourth prong of the Beard test—that there must be an honest and reasonable attempt to satisfy the requirements of the tax law—is disputed in this case. The parties advocate competing interpretations of that language. The IRS argues, consistent with the holdings of the Fourth, Sixth, Seventh, and Ninth Circuits, that delinquency in filing a tax return is relevant to determining whether the taxpayer made an honest and reasonable effort to comply with the law. Justice urges the contrary approach adopted by the Eighth Circuit, which holds "that the

9

honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself, not from the filer's delinquency or the reasons for it. The filer's subjective intent is irrelevant." In re Colsen, 446 F.3d 836, 840 (8th Cir. 2006).

We join the majority of federal appeals courts in holding that the fourth Beard factor requires analysis of the entire time frame relevant to the taxpayer's actions. Failure to file a timely return, at least without a legitimate excuse or explanation, evinces the lack of a reasonable effort to comply with the law. This interpretation comports with the common-sense meaning of "honest and reasonable." It is also consistent with the purpose of bankruptcy generally: to provide a "fresh start" to the "honest but unfortunate debtor." In re Mitchell, 633 F.3d 1319, 1326 (11th Cir. 2011). Indeed, we have observed that Congress's purpose in enacting the exceptions to discharge in § 523 was "[t]o ensure that only the honest but unfortunate debtors receive the benefit of discharge . . . ." Id.  It would impede that goal to permit a taxpayer who has not made an honest and reasonable effort to comply with the tax laws to discharge his tax debts by limiting our analysis to the face of his tax documents.

A significant factor in our decision to adopt the majority position espoused by the Fourth, Fifth, Seventh, and Ninth Circuits[7] is the fact that our system of taxation relies on prompt and honest self-reporting by taxpayers. A taxpayer who does not file a timely return and who submits no information at all until contacted by the IRS frustrates the requirements and objectives of that system. Indeed, filing tax documents only after the IRS has gathered the relevant information and assessed a deficiency significantly undermines the self-assessment system. Delinquency in filing, therefore, is evidence that the taxpayer failed to make a reasonable effort to comply with the law.

As the Fourth Circuit in Moroney points out, a fundamental disagreement between the majority position and that of the Eighth Circuit, is "about the relevant time frame in which to assess the honesty and reasonableness" of the taxpayer's efforts to comply with the tax laws. Moroney, 352 F.3d at 905. We agree with the majority position that the relevant time frame is the entire time frame of the taxpayer's action (and inaction), which of course includes the time from the taxpayer's delinquency through the time when the belated return is filed. The truncated time frame considered by the Eighth Circuit – i.e. only the time frame in which the belated return itself is filed – seems to us to be flawed for several

---

[7]    In re Payne, 431 F.3d 1055 (7th Cir. 2005); In re Moroney, 352 F.3d 902 (4th Cir. 2003); In re Hatton, 220 F.3d 1057 (9th Cir. 2000); In re Hindenlang, 164 F.3d 1029 (6th Cir. 1999).

11

reasons. It narrows the inquiry to the "face of the form itself." See Colsen, 446 F.3d at 840 ("We therefore hold that the honesty and genuineness of the filer's attempt to satisfy the tax laws should be determined from the face of the form itself . . . ."). However, there is no suggestion in the fourth Beard prong – "there must be an honest and reasonable attempt to satisfy the requirements of the tax law," Beard, 82 T.C. at 777 – that the honesty and reasonableness of the taxpayer's attempts should be evaluated in such a truncated time frame. Nor does limiting our inquiry to such a truncated time frame capture the common-sense meaning of an inquiry to determine a taxpayer's efforts to comply with the law.

The Eighth Circuit's decision in Colsen and Judge Easterbrook's dissent from the Seventh Circuit's majority opinion in Payne make three primary arguments against the majority interpretation of the "honest and reasonable" prong of the Beard test. First, they argue that a belated return is still useful to the IRS, even if filed after the authorities have assessed the taxpayer's liability, because even a late return replaces the agency's estimates with facts. See, e.g., Payne, 431 F.3d at 1060-61 (Easterbrook, J., dissenting). However, the focus of the fourth prong Beard test is not the document's utility to the IRS, but the *taxpayer's* efforts to comply with the law. Regardless of its usefulness to the IRS, a return filed only after the IRS has issued a notice of deficiency is evidence of a lack of effort to

12

comply with the self-reporting requirements of our tax system. As the Payne

majority wrote:

> And neither Payne's purpose nor whether his return had any value to the IRS is critical. The legal test is not whether the filing of a purported return has some utility for the tax authorities, but whether it is a *reasonable* endeavor to satisfy the taxpayer's obligations . . . .

Id. at 1058 (emphasis in original).

Second, they argue that one purpose of the filing requirement is that the

person with the best knowledge of his particular income and deductible expenses –

the taxpayer – provides that information. See id. at 1061 (Easterbrook, J.,

dissenting). While it is true that accuracy is one of the benefits of self-reporting (so

long as it is honest), the *primary* rationale of the self-reporting system is that the

IRS, as a practical matter, does not have the resources to investigate everyone's tax

liability. See Moroney, 352 F.3d at 906 (4th Cir. 2003) ("The very essence of our

system of taxation lies in the self-reporting and self-assessment of one's tax

liabilities."). Again, a taxpayer who fails to timely self-report and instead waits

until the IRS has determined his liability defeats the primary purpose of self-

reporting and self-assessment. Thus a belated return filed only after the IRS has

produced an SFR and issued a notice of deficiency is evidence that the taxpayer

did not make a reasonable attempt to comply with the tax law.

13

Finally, they point out that a strict interpretation of the honesty requirement might render § 523(a)(1)(C) superfluous. Payne, 431 F.3d at 1062 (Easterbrook, J., dissenting). Section 523(a)(1)(C) precludes the discharge of any tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). If a tax document cannot be a return unless filed honestly, Judge Easterbrook argues, then any fraudulent tax document is not a return by the operation of § 523(a)(1)(B)(i), thus rendering § 523(a)(1)(C) superfluous. We disagree for several reasons.

First, although there is overlap, the category of filings which are not honest and reasonable is much broader than the category of fraudulent returns. Congress had ample reason to deny dischargeability in cases where it would be difficult for the Government to prove fraud. And indeed, although a taxpayer's actions might not rise to the level of fraud, Congress understandably intended to deny dischargeability to a taxpayer who did not make an honest and reasonable effort to comply with the tax laws.

Second, we note that the canon of statutory interpretation prohibiting a reading that renders one section of a statute superfluous is not absolute. "[C]anons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to . . . [the] cardinal canon before all others. . . . [C]ourts must presume that a

14

legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149 (1992). Additionally, "[r]edundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." Id. (internal citation omitted). Our interpretation of the Beard test does not create a positive repugnancy with § 523(a)(1)(C). In fact, both sections have the same goal; Congress has provided that non-dischargeability should result *both* from fraudulent returns *and also* from returns with respect to which the taxpayer has not made honest and reasonable efforts to comply with the law. We must give effect to *both* provisions. Thus we have no qualms in adopting this interpretation of "honest and reasonable" – i.e. the Hindenlang, Moroney, Payne, and Hatton case law which in turn adopted the Beard test to determine whether a filing constitutes a "return."

Thus we hold that the time frame for evaluation of a taxpayer's apparent effort to comply with the law under the fourth Beard factor includes all of the taxpayer's conduct with respect to the relevant tax years. In a case such as this one, where a taxpayer files many years late, without any justification at all, and only after the IRS has issued notices of deficiency and has assessed his tax liability, the taxpayer's behavior does not evince an honest and reasonable effort to satisfy the

15

requirements of the tax law. Thus, Justice's tax debts associated with his delinquent returns may not be discharged in bankruptcy.[8]

We assume, without deciding, that Congress did not intend to include filing deadlines when it required, in the hanging paragraph, that tax returns comply with "applicable filing requirements." Even making that assumption, however, we hold that Justice's late-filed Forms 1040 do not qualify as tax returns under the Beard test because they do not evince an honest and reasonable effort to comply with the tax law. As a result, his tax debts for tax years 2000 through 2003 are debts for tax obligations with respect to which no return was filed. They are not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(1)(B)(i). The judgment of the district court is

AFFIRMED.

---

[8]    However, we do not adopt a *per se* rule. We agree with the Fourth Circuit that "[c]ircumstances not presented in this case might demonstrate that the debtor, despite his delinquency, had attempted in good faith to comply with the tax laws." Moroney, 352 F.3d at 907.