**IN RE Richard Alan EARLS, Sr., Peggy Faye Earls, Debtors**

**Richard Alan Earls, Sr. Peggy Faye Earls, Plaintiffs**

v.

**United States of America, Defendant**

**Case No. 13–14649**
**Adversary No. 14–1043**

United States Bankruptcy Court,
S.D. Ohio, Western Division.

Signed April 15, 2016

---

Terry Serena, Serena Law LLC, Cincinnati, OH, for Plaintiffs.

Edward J. Murphy, US Dept of Justice, Tax Division, Washington, DC, for Defendant.

## DECISION REGARDING THE NONDISCHARGEABILITY OF TAX DEBT

Beth A. Buchanan, United States Bankruptcy Judge

The primary issue in this case is whether a federal tax return filed after the Internal Revenue Service has assessed a taxpayer's tax liability pursuant to 26 U.S.C. § 6020(b) qualifies as a "return" for purposes of 11 U.S.C. § 523(a) relating to the dischargeability of tax debts. Under the facts of this case, this Court holds that it does not.

## I. BACKGROUND

The debtors in this case, Richard and Peggy Earls, failed to timely file federal income tax returns for the 2000, 2001, 2002, 2003, 2004, and 2005 tax years. In 2005, the Earls approached the firm of JK Harris, Inc., a professional return preparer (the "Tax Preparer"), to prepare their joint tax returns for the 2000 through 2005 tax years. The returns were prepared and signed by the Tax Preparer on April 26, 2005 and April 27, 2005. However, the Earls did not obtain copies of these tax returns to sign and file with the IRS until almost three years later.

In the meantime, the Internal Revenue Service (the "IRS") invoked its "substitute for return" (the "SFR") procedure under 26 U.S.C. § 6020(b) based on Mr. Earls' failure ·to file his tax returns. The SFR procedure is the mechanism that the IRS uses to deal with taxpayers who do not file required tax returns. Under this procedure, the IRS examined Mr. Earls' 2000 through 2004 income tax years and prepared and executed SFRs on his behalf for those years. In preparing the SFRs, the IRS used a filing status of "married filing separate" and allowed Mr. Earls one personal exemption, the standard deductions and a deduction for one-half of the calculated self-employment tax. The IRS mailed notices of deficiency to Mr. Earls pursuant to 26 U.S.C. § 6212(a) in connection with the 2000 through 2004 SFRs, which informed Mr. Earls that he had ninety-days to file a petition with the United States Tax Court if he wished to contest the IRS's determination. Mr. Earls did not file a petition with the Tax Court. The IRS subsequently made assessments of income tax, interest and penalties against Mr. Earls for the 2000 through 2004 tax years. The relevant dates in Mr. Earls' SFR procedure are summarized below:

| Tax Year | SFR Date | Notice of Deficiency Date | Assessment Date |
|---|---|---|---|
| 2000 | 05/30/2005 | 11/14/2005 | 04/03/2006 |
| 2001 | 05/30/2005 | 11/14/2005 | 04/03/2006 |
| 2002 | 07/04/2005 | 02/27/2006 | 07/10/2006 |
| 2003 | 12/26/2005 | 05/30/2006 | 10/02/2006 |
| 2004 | 12/26/2005 | 05/30/2006 | 10/02/2006 |

The IRS did not prepare a SFR on behalf of Mr. Earls for the 2005 tax year. Nor did the IRS prepare a SFR on behalf of Mrs. Earls for any tax year at issue.

Eventually, the tax returns prepared by the Tax Preparer were filed with the IRS on April 18, 2008 (the "2008 Filings"). The 2008 Filings were prepared using the

status of "married filing jointly" and included two personal exemptions, two dependency exemptions, and itemized deductions. The 2008 Filings showed a joint tax obligation of $126,274 for the 2000 through 2004 tax years versus $214,492 calculated by the IRS in the SFRs. While the parties do not agree on the exact figure, the IRS abated at least $87,000 in taxes based on the 2008 Filings.

The Earls submitted at least one offer in compromise to the IRS in an effort to address their tax obligations. The offer was rejected. The Earls ultimately entered into an installment agreement with the IRS in June 2013 to pay the unpaid taxes. The Earls made two payments under the agreement before filing their chapter 13 petition on October 4, 2013.

The IRS filed a timely proof of claim (the "*IRS Claim*") in the total amount of $333,994.62. The amount of the IRS Claim is based on the 2008 Filings. The Earls' confirmed chapter 13 plan projects to pay the $123,090.19 secured portion of the IRS Claim in full. The plan projects to pay a 1% distribution on the unsecured portion of the IRS Claim. The parties filed cross-motions for summary judgment regarding whether the balance of the IRS's unsecured claim is dischargeable if the Earls complete their chapter 13 plan.

## II. Summary Judgment Standard

The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Civil Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "As to materiality, the substantive law will identify which facts

are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir.2003).

The standards for evaluating motions for summary judgment do not change where the parties present cross-motions for summary judgment. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. Ohio 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations omitted). The filing of cross-motions for summary judgment does, however, "authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Greer v. United States*, 207 F.3d 322, 326 (6th Cir.2000).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the summary judgment process should not be re-

garded " 'as a disfavored procedural short-cut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* at 321, 106 S.Ct. 2548.

## III. *Tax Obligations Excepted From Discharge in Chapter 13 Cases*

In general, a chapter 13 debtor will receive "a discharge of all debts provided for by the plan" once the debtor completes all required plan payments. 11 U.S.C. § 1328(a). Certain tax obligations, however, are excepted from discharge. 11 U.S.C. § 1328(a)(2) and §§ 523(a)(1)(B), (i)(C). In particular, a chapter 13 debtor is not discharged from any debt:

(1) for a tax or a customs duty—

\* \* \*

(B) with respect to which a return, or equivalent report or notice, if required—

(i) was not filed or given; or

(ii) was filed or given after the date on which such return, report, or notice was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

11 U.S.C. §§ 523(a)(1)(B), (1)(C).

▇▇▇ Exceptions to discharge are narrowly construed in favor of debtors to further the Bankruptcy Code's policy of providing debtors with a "fresh start." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A creditor bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge. *Id.* at 291, 111 S.Ct. 654.

## IV. *Legal Analysis*

The unsecured portion of the IRS Claim includes $77,839.50 in taxes, $52,492.38 in interest and $80,572.55 in penalties. The parties agree that the penalties are dischargeable. As to the taxes and interest, the Earls contend in their *Motion for Summary Judgment* that the 2008 Filings are "returns" for purposes of the § 523(a) dischargeability analysis. Since the "returns" were filed in 2008, the § 523(a)(1)(B)(i) exception to discharge for failure to file returns is not applicable. Similarly, they point out that the 2008 Filings were filed more than two years before their bankruptcy petition date so the § 523(a)(1)(B)(ii) exception to discharge is not applicable. Lastly, the Earls argue that there is no evidence that the Earls' tax liabilities were the product of fraud or that they willfully attempted to evade or defeat their tax obligations so the § 523(a)(1)(C) exception to discharge does not apply.

The United States filed a *Motion for Partial Summary Judgment* seeking a finding that Mr. Earls' tax liabilities for years 2000 through 2004 are nondischargeable under § 523(a)(1)(B)(i) because they are tax debts for which no "return" was filed. The United States argues that the 2008 Filings for those tax years are not returns as a matter of law under binding Sixth Circuit precedent because the filings were made after the IRS had already assessed Mr. Earls' tax liabilities through the SFR process and, therefore, the filings served no tax purpose. The United States did not move for summary judgment with respect to Mr. Earls' 2005 tax liabilities or with respect to any of the tax liabilities of Mrs. Earls.

## A. *Mr. Earls' Tax Debt for the Tax Years 2000 to 2004*

▇▇▇ The parties agree that the Sixth Circuit case of *United States of America v.*

*Hindenlang (In re Hindenlang),* 164 F.3d 1029 (6th Cir.1999), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 37 (1999) sets forth the applicable legal standard for determining whether the 2008 Filings qualify as "returns" for purposes of § 523(a)(1)(B). *Hindenlang* adopted the following four-part test for determining whether a document qualifies as a "return":

> (1) [the filing] must purport to be a return; (2) [the filing] must be executed under penalty of perjury; (3) [the filing] must contain sufficient data to allow calculation of tax; and (4) [the filing] must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

164 F.3d at 1033 (adopting the *Beard* test articulated by the Tax Court in *Beard v. Commissioner,* 82 T.C. 766, 777 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986)). As was the case in *Hindenlang,* this case turns on the fourth prong: whether the 2008 Filings were a reasonable and honest attempt by Mr. Earls to satisfy the requirements of the tax law for the 2000 through 2004 tax years. With respect to this fourth prong, the *Hindenlang* court concluded that:

> [I]f a document purporting to be a tax return serves no purpose at all under the Internal Revenue Code, such a document cannot, as a matter of law, qualify as an honest and reasonable attempt to satisfy the requirements of the tax law. Therefore the document is not a "return" for purposes of 11 U.S.C. § 523(a)(1)(B).

*Id.* at 1035 (footnote omitted). While acknowledging that it is the government's burden to show that the tax forms submitted by a debtor serve no purpose under the tax law, the *Hindenlang* court held that the government's burden is satisfied where it shows that the debtor failed to respond to deficiency letters sent by the IRS and the government assessed a deficiency. *Id.* at 1034–35.

The parties do not dispute that Mr. Earls failed to respond to deficiency letters sent by the IRS and that the government assessed deficiencies as to Mr. Earls for tax years 2000 through 2004. Mr. Earls argues nonetheless that *Hindenlang* does not create a *per se* rule that disqualifies all post-assessment filings from being considered an honest and reasonable attempt to satisfy the requirements of the tax law. The IRS acknowledged during oral argument that *Hindenlang* theoretically left open the possibility that there may be circumstances where a post-assessment filing might serve a tax purpose. *See In re Izzo v. United States (In re Izzo),* 340 B.R. 586, 592 (E.D.Mich.2006) (observing that certain passages in *Hindenlang* "seem to suggest that a filing after an IRS assessment is merely *presumed* to serve no 'tax purpose,' and that this presumption may be overcome in the proper circumstances")(emphasis in original). Given the parties' agreement on this point, this Court will consider whether the evidence in this case establishes an exception to "the general rule [announced in *Hindenlang* ] that post-assessment tax returns do not represent an 'honest and reasonable attempt' to comply with the tax laws." *Id.*

Mr. Earls makes two principal arguments. His first and primary argument is that there is objectively verifiable evidence that the 2008 Filings represent an honest and reasonable attempt to satisfy the requirements of the tax laws. Mr. Earls notes that the IRS first began the "substitute for return" procedure on May 30, 2005 and that the first assessment against Mr. Earls was not made until April 3, 2006. The 2008 Filings, however, were signed by the Tax Preparer on April 26 and 27, 2005,

more than a month before the "substitute for return" procedure even began and almost one year before the IRS made any assessments against him. Mr. Earls maintains that the unique fact that he attempted to bring himself into compliance with his obligation to file returns before any assessment was made—as evidenced by the Tax Preparer's signature on the returns—demonstrates he made an honest and reasonable attempt to satisfy the requirements of the tax laws. He argues that it was only his inability to pay the Tax Preparer for their services that prevented him from filing the 2008 Filings prior to the assessments made by the IRS.

Assuming these facts to be true, as this Court must for purposes of these summary judgment motions, the fact that the 2008 Filings were completed by the Tax Preparer before the IRS began the substitute for return procedure does not equate to an honest *and* reasonable attempt to satisfy the requirements of the tax laws. While engaging a tax preparer to prepare the returns prior to the IRS's assessments of taxes may evince an *honest*[1] attempt at complying with the tax laws, the three-year delay in actually filing the returns, which were already three to seven years delinquent, is not a *reasonable* attempt. Mr. Earls' allegation that he could not afford to pay the Tax Preparer for its services before the IRS assessments were made is similarly unavailing. Taking his allegation to be true, Mr. Earls could have made a reasonable attempt to prepare and file the returns himself.

Mr. Earls' second argument is that the 2008 Filings serve multiple tax purposes and, as such, rebut any presumption under *Hindenlang* that the 2008 Filings do not qualify as an honest and reasonable attempt to satisfy the requirements of the tax law. Mr. Earls argues that the most obvious tax purpose served by the 2008 Filings is to establish the correct amount of his tax liability. He asserts that tax liability assessments by the IRS are inherently inaccurate and are almost always overstated given the filing status, deduction and exemption assumptions used by the IRS in making the assessments. Therefore, while filing a return post-assessment may benefit the taxpayer by reducing the taxes owed after the appropriate filing status and available deductions and exemptions are taken into account, Mr. Earls contends that it also serves the valid tax purpose of enabling the IRS to accurately calculate a taxpayer's obligations.

Mr. Earls maintains that the IRS's own policies and procedures also demonstrate that post-assessment returns serve a legitimate tax purpose. Referencing taxpayer information from the IRS website,[2] Mr. Earls notes that the IRS both solicits and accepts returns following a substitute for return assessment. He further notes that the IRS will not even consider any collection alternatives, including an offer-in-compromise, if the taxpayer has unfiled returns. Mr. Earls suggests that the IRS encourages taxpayers to file post-assessment returns because the IRS wants to set

---

1. The IRS has not alleged that the 2008 Filings were "sham" filings, *cf. Waltner v. United States*, 679 F.3d 1329, 1334 (Fed.Cir.2012) (an "all zero" return is not a valid tax return) or that the 2008 Filings were made with the intent to start the two-year clock running under 11 U.S.C. § 523(a)(1)(B)(ii).

2. "If the IRS files a substitute return, it is still in your best interest to file your own return to take advantage of all the exemptions, credits and deductions to which you are entitled. The IRS will generally adjust your account to reflect the correct figures." *See* "Notices of Past Due Returns" and "Filing Past–Due Returns" at IRS.gov.

its records straight regarding the amount of taxes actually owed.

Mr. Earls argues that this benefit to the tax system was a factor missing in *Hindenlang*. He points out that the debtor in *Hindenlang* submitted post-assessment returns that were essentially mirror images of the substitute for returns prepared by the IRS. *Hindenlang*, 164 F.3d at 1031, 1034. Accordingly, Mr. Earls understands why the *Hindenlang* court concluded that the returns filed by the debtor did not serve any tax purpose since the filing of the returns did not materially change the calculation of the debtor's tax liability. Relying on *Colsen v. United States (In re Colsen)*, 446 F.3d 836 (8th Cir.2006), Mr. Earls maintains that his case is distinguishable from *Hindenlang*. In *Colsen*, the Eighth Circuit Court of Appeals held that the post-assessment returns filed by the debtor served an important purpose under the tax laws because it enabled the IRS to more accurately calculate the debtor's tax liability, resulting in a reduction of thousands of dollars in taxes and interest. *Id.* at 840–41. Here too, Mr. Earls argues that the 2008 Filings served an important tax purpose given that the information provided in the 2008 Filings resulted in the reduction of his tax obligations by approximately $88,000.

This Court declines to follow *Colsen* for several reasons. First, the argument that a belated return serves a legitimate tax purpose because it is useful to the IRS has been soundly rejected by the majority of circuits courts that have considered it.

See *Justice v. United States (In re Justice)*, 817 F.3d 738 (11th Cir.2016)[3]; *In re Payne*, 431 F.3d 1055 (7th Cir.2005); *In re Moroney*, 352 F.3d 902 (4th Cir.2003). Most recently, the Eleventh Circuit Court of Appeals explained that "the focus of the fourth prong *Beard* test is not the document's utility to the IRS, but the *taxpayer's* efforts to comply with the law." *In re Justice*, 817 F.3d at 745 (emphasis in original); *see also In re Payne*, 431 F.3d at 1058 ("And neither [the debtor's] purpose nor whether his return had any value to the IRS is critical. The legal test is not whether the filing of a purported return has some utility for the tax authorities, but whether it is a *reasonable* endeavor to satisfy the taxpayer's obligations ..." (emphasis in original)).

In reaching this conclusion, the majority focuses on the essence of our tax system—self-reporting and self-assessment of one's tax liabilities. *In re Moroney*, 352 F.3d at 906. "[O]ur system of taxation relies on prompt and honest self-reporting by taxpayers.... [T]he IRS, as a practical matter, does not have the resources to investigate everyone's tax liability." *In re Justice*, 817 F.3d at 745. So, while the IRS may encourage taxpayers to submit returns even post-assessment in an effort to maintain accurate records, returns submitted post-assessment are nonetheless contrary to the self-reporting objective of the tax system.[4] *Id.* As such, "a belated return filed only after the IRS has produced an SFR and issued a notice of deficiency is evidence that the taxpayer did not make

3. The Earls' *Motion to Strike* the United States' *Notice of Supplemental Authority* regarding the recently decided decision of *In re Justice* is denied as moot. This Court was already aware of this decision.

4. Courts following *Hindenlang* have concluded that, even if the IRS takes action based on a post-assessment filing—such as abating the

debtor's taxes or allowing the debtor to obtain an offer of compromise—the filing may still fail to demonstrate an honest and reasonable attempt to comply with the tax law. *Moffitt v. United States (In re Moffitt)*, 2013 Bankr.LEXIS 2628 at *6–7, 2013 WL 3294898 at *3 (Bankr.W.D.Ky. June 28, 2013) (collecting cases).

a reasonable attempt to comply with the tax law." *Id.*

Second, *Colsen* is contrary to binding Sixth Circuit precedent. The Eighth Circuit in *Colsen* focused on the face of the tax form itself in determining the honesty and genuineness of the debtor's attempt to satisfy the tax laws—the debtor's delinquency in filing the return or the reason for the delinquency is irrelevant under *Colsen*. *In re Colsen*, 446 F.3d at 840. In contrast, the Sixth Circuit in *Hindenlang* clearly considered timing to be a relevant factor in determining whether there was a reasonable effort to comply with the tax laws. *In re Hindenlang*, 164 F.3d at 1034 ("A purported return filed *too late* to have any effect at all under the Internal Revenue Code cannot constitute 'an honest and reasonable attempt to satisfy the requirements of the tax law." (emphasis added)); *see also In re Justice*, 817 F.3d at 744 ("We join the majority of federal appeals courts in holding that the fourth *Beard* factor requires analysis of the entire time frame relevant to the taxpayer's actions. Failure to file a timely return, at least without a legitimate excuse or explanation, evinces the lack of a reasonable effort to comply with the law.").

Lastly, the *Colsen* court held that submitting a form that contained data which allowed the IRS to more accurately calculate the taxpayer's obligation was an honest effort to comply with the tax laws. *In re Colsen*, 446 F.3d at 840–41. The *Beard* test, however, already requires the taxpayer to provide information that allows the IRS to accurately assess a taxpayer's tax obligation. Under the third prong of the *Beard* test, the document submitted by the taxpayer "must contain sufficient data to allow calculation of tax" for the document to qualify as a "return." *In re Hindenlang*, 164 F.3d at 1033. Accordingly, the fourth element under the *Beard* test must "contemplate some *further* evidence of the taxpayer's reasonable efforts to comply with the tax law, beyond the bare fact that [the taxpayer] supplied information from which the IRS was able to more accurately compute [the taxpayer's] tax liability." *In re Izzo*, 340 B.R. at 595 (emphasis in original).

Mr. Earls makes two final arguments as to why the 2008 Filings served a tax purpose. He asserts that the 2008 Filings served a tax purpose by creating an additional collection source for the IRS—namely Mrs. Earls. When the Earls submitted their 2008 Filings they elected to file joint returns, making them jointly liable for the taxes owed. Since the assessments made by the IRS under the SFR procedure were only against Mr. Earls, the Earls' joint liability by virtue of the 2008 Filings created a potentially significant benefit to the IRS. Under the facts of this case, however, Mrs. Earls earns only a nominal income [5] and does not separately own any appreciable assets. Accordingly, this potential additional collection source is immaterial in this case. Lastly, Mr. Earls contends that the 2008 Filings served a tax purpose by verifying the Earls' last known address. Because the Earls did not change their address during the time period in issue, no purpose was served, tax or otherwise, by providing the IRS with their same address.

In summary, this Court finds that the IRS has proven, by a preponderance of the evidence, that the 2008 Filings were not an honest and reasonable attempt to satisfy the requirements of the tax law and, therefore, are not tax "returns" for purposes of

---

**5.** The Earls' *Statement of Financial Affairs* lists Mrs. Earls' income as $20,000 in 2011, $20,000 in 2012 and $13,000 in 2013.

§ 523(a)(1)(B). Accordingly, this Court concludes that the unsecured portion of the IRS Claim is nondischargeable under § 523(a)(1)(B)(i).[6]

### B. Mrs. Earls' Tax Debt for the Years 2000 through 2004 and the Earls' Joint Tax Debt for 2005

■ The Earls move for summary judgment in their favor finding that Mrs. Earls' tax debt for the years 2000 through 2004 and the Earls' joint tax debt for year 2005 are dischargeable. The Earls briefly assert that the returns for these tax years were not subject to the SFR procedure at issue with Mr. Earls' 2000 through 2004 tax debts nor were these returns late returns filed within two years of the petition date. As such, they argue that the exceptions to discharge under § 523(a)(1)(B)(i) and (ii) do not apply. They further argue that the IRS did not put forth sufficient evidence to establish a genuine dispute of material fact with respect to the IRS's claim that the Earls' tax obligations are nondischargeable under § 523(a)(1)(C) as a willful attempt to evade or defeat their tax obligations.

The IRS did not move for summary judgment on its § 523(a)(1)(C) count and this Court agrees with the IRS that this is not an issue appropriate for summary judgment. *See Mills v. Internal Revenue Serv.*, 337 B.R. 691, 704 (Bankr.D.Kan. 2005) (holding that where the debtor suggests that "his non-payment [of taxes] over twelve years was as a result of a 'downward spiral' and that 'despite his best efforts' he was unable to meet all his obligations," it is not the court's function at the summary judgment phase to weigh evidence without the ability to assess the credibility and demeanor of the witnesses). Accordingly, the Earls' *Motion for Summary Judgment* with respect to Mrs. Earls' tax debt for years 2000 through 2004 and the Earls' joint tax debt for 2005 is denied.

## V. CONCLUSION

For the foregoing reasons:

1. The Earls' Motion for Summary Judgment is DENIED.

2. The United States' *Motion for Partial Summary Judgment* is GRANTED. The unsecured portion of the IRS Claim, which consists of $77,839.50 in taxes and $52,492.38 in interest for a total amount of $130,331.88, against Richard Alan Earls, Sr. is nondischargeable pursuant to § 523(a)(1)(B)(i). The penalties in the amount of $80,572.55 against Richard Alan Earls, Sr. and Peggy Faye Earls are dischargeable.

**IT IS SO ORDERED.**

---

6. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added a "hanging paragraph" to 11 U.S.C. § 523(a)(19), which has been interpreted by three circuit courts to impose an additional element of timeliness to the definition of a "tax return." *See Fahey v. Massachusetts Dep't of Revenue (In re Fahey)*, 779 F.3d 1 (1st Cir.2015); *Mallo v. Internal Revenue Serv. (In re Mallo)*, 774 F.3d 1313, 1320 (10th Cir.2014); *McCoy v. Mississippi State Tax Comm'n (In re McCoy)*, 666 F.3d 924 (5th Cir.2012). The IRS expressly has not adopted this position. There-fore, this Court finds that it is not necessary to address this issue. Further, the IRS clarified at the oral argument that the hanging paragraph does not create a separate basis for non-dischargeability. Therefore, this Court finds that it is not necessary to address this issue either. Lastly, the IRS stated at the oral argument that it was not pursuing an additional theory that the debt arose or was tied to the original assessment. Therefore, this Court finds that it is not necessary to address this issue.