[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14922
_____

D.C. Docket Nos. 5:18-cv-00341-JSM; 6:15-bkc-08569-KSJ

In Re: JOHN ROBERT SHEK,

Debtor.
_____

MASSACHUSETTS DEPARTMENT OF REVENUE,

Defendant-Appellant,

versus

JOHN ROBERT SHEK,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 23, 2020)

Before GRANT and ANDERSON, Circuit Judges, and ROYAL,* District Judge.

ANDERSON, Circuit Judge:

The Massachusetts Department of Revenue ("DOR") appeals the district court's conclusion that John Shek's Massachusetts income tax return debt is dischargeable in bankruptcy. Because, under the circumstances of this case, we conclude that the Bankruptcy Code permits discharge of Shek's late-filed tax return debt, we affirm.

I.

John Shek filed his 2008 state income tax return in November 2009, seven months late. He owed the government of Massachusetts $11,489, which remained unpaid.

Six years later, Shek filed for Chapter 7 bankruptcy in Florida. He received an order of discharge in January 2016, wiping his slate clean of previously held debts. DOR then resumed its collection activities on Shek's outstanding tax debt. Shek filed a motion to reopen his bankruptcy case to determine whether the order of discharge encompassed his tax liability to Massachusetts. The parties cross-moved for summary judgment, and the bankruptcy court held that his late-filed tax return was dischargeable in bankruptcy.

---

* Honorable Ashley C. Royal, United States District Judge for the Middle District of Georgia, sitting by designation.

2

The parties filed a joint motion agreeing to a stipulated final order and judgment to facilitate DOR's appeal of the central issue in the dispute—whether Shek's late-filed tax return debt was dischargeable under the Bankruptcy Code. DOR appealed to the district court, which agreed with the bankruptcy court.[1] This appeal followed.[2]

## II.

The Bankruptcy Code provides for discharge of most of an individual debtor's debts. This discharge voids judgments determining a debtor's personal liability with respect to discharged debts and enjoins commencement or continuation of actions to collect those debts. 11 U.S.C. § 524. The Code tends to favor discharges, in accordance with Congress' purpose in enacting the Code: "to grant a fresh start to the honest but unfortunate debtor." Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (internal citations and quotations omitted).

But Congress exempts certain debts from discharge. These non-dischargeable debts are set forth in 11 U.S.C. § 523. Section 523(a) specifically carves out certain kinds of tax debts from the Code's dischargeability rule, stating:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

---

[1] The relevant facts are not in dispute. We review the district and bankruptcy court's conclusions of law de novo. In re Hood, 727 F.3d 1360, 1363 (11th Cir. 2013).

[2] The Court notes the contributions the amicus curiae, Professor John Pottow of the University of Michigan Law School. His briefing and oral argument were very helpful in untangling this corner of bankruptcy law.

(1) for a tax or a customs duty— . . .
                    (B) with respect to which a return, or equivalent
report or notice, if required—
                                (i) was not filed or given; or
                                (ii) was filed or given after the date on
which such return, report, or notice was last due, under applicable law
or under any extension, and after two years before the date of the
filing of the petition.[3]

In essence, the statute provides that a tax debt is not dischargeable if a return (1) was not filed at all, or (2) was filed after the date on which the return was due, and that filing was within two years before the debtor's bankruptcy was filed.[4]

Before 2005, neither the Bankruptcy Code nor the Internal Revenue Code defined "return."  Courts adopted a test developed in the Tax Court known as the Beard test (first fleshed out in Beard v. Comm'r of Internal Revenue, 82 T.C. 766 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986)) to determine whether a document analogous to a Form 1040 constitutes a "return" for purposes of dischargeability under the Code.[5]  The Beard test established four requirements a putative return must satisfy to constitute a "return": (1) it must purport to be a return; (2) it must

---

[3]  Although not relevant here, § 523 also excludes from dischargeability debtors who file fraudulent returns.  § 523(a)(1)(C).  In addition, to discharge a tax debt, the tax return must have been due at least three years before the bankruptcy petition was filed.  § 523(a)(7)(B).

[4]  Shek filed his bankruptcy petition more than five years after he filed his late return, so § 523(a)(1)(B)(ii) would not prevent discharge.

[5]  The Beard test builds upon Supreme Court precedent stating that, for some purposes, a document purporting to be a return need not strictly comply with the Internal Revenue Code's requirements, so long as it works, in essence, as a "constructive return."  See Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180 (1934) ("Perfect accuracy or completeness is not necessary [if a filing] purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law.").

be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.  See In re Justice, 817 F.3d 738, 741 (11th Cir. 2019).

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which for the first time added a definition of "return" to the Code.  The definition states:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or similar State or local law.

11 U.S.C. 523(a)(*).[6]

Note that this definition refers in part to §§ 6020(a) and (b) of the Internal Revenue Code.  These sections govern "substitutes for returns."  When the IRS discovers that a tax return is missing, it can draft a return itself with the taxpayer's cooperation under 26 U.S.C. § 6020(a).  This procedure is almost never used and results in a "minute" number of returns, according to the IRS.  See Justice, 817

---

[6] This definition of "return" appears at the end of subsection (a) of § 523.  Because it has no numbered or lettered subsection designation of its own, courts often cite to it as § 523(a)(*) and refer to it as the "hanging paragraph" or "flush language."  See, e.g., Justice, 817 F.3d at 742 n.4; In re Mallo, 774 F.3d 1313, 1318 (10th Cir. 2014).

F.3d at 743 n.5; In re Fahey, 779 F.3d 1, 6 (1st Cir. 2015).  The IRS can also file a

substitute for return without the taxpayer's cooperation under 26 U.S.C. § 6020(b).

The hanging paragraph thus makes clear that § 6020(a) returns constitute "returns"

for purposes of dischargeability, while § 6020(b) returns do not, resolving a pre-

2005 dispute between bankruptcy courts as to the proper categorization of

§§ 6020(a) and (b) returns.[7]  Shek did not file his return under § 6020, but the

inclusion of § 6020 returns in the hanging paragraph will affect our interpretation

of the provision, as indicated below.

The dispute in this case concerns the first sentence of the hanging

paragraph's definition of "return", which provides that a "return" for purposes of

§ 523 means "a return that satisfies the requirements of applicable nonbankruptcy

law (including applicable filing requirements)."  DOR raises two arguments in an

attempt to demonstrate that Shek's putative return, which was filed seven months

late, does not qualify as a "return" under § 523(a)(*).  First, DOR argues that the

return did not satisfy "applicable filing requirements" because it did not comply

with Massachusetts' April 15th tax return deadline.  Second, and relatedly, DOR

argues that the "applicable nonbankruptcy law" here is Massachusetts law, and that

---

[7] Compare In re Ridgway, 322 B.R. 19, 37 (Bankr. D. Conn. 2005) (holding that a § 6020(b) return is a "return" under § 523), with In re Lowrie, 162 B.R. 864, 866 (Bankr. D. Nev. 1994) (holding that a § 6020(b) return is not a "return" under § 523).

Massachusetts defines a "return" by reference to its timeliness. We address each argument in turn.

## III.

DOR's first argument is that the phrase "applicable filing requirements" includes the relevant temporal deadline for filing a tax return. If a taxpayer does not timely file his or her return, so the argument goes, it has not complied with all "applicable filing requirements." Therefore, DOR argues, an untimely return is not a "return" for purposes of § 523. This court has termed this approach the "one-day-late rule" because it would prohibit "discharge of a tax debt with respect to which a return was filed even one day late." Justice, 817 F.3d at 743.[8]

DOR's syllogism—a return must comply with "applicable filing requirements," and a filing deadline is an "applicable filing requirement," so a return that does not meet its deadline has not complied with "applicable filing requirements"—has some force to it. All three of our sister circuits to have considered this question have held that the plain language of the hanging paragraph requires DOR's interpretation. See Fahey, 779 F.3d at 4 ("So the question is whether timely filing is a 'filing requirement' under Massachusetts law. The answer is plainly yes."); Mallo, 774 F.3d at 1327 ("[T]he plain and unambiguous language of § 523(a) excludes from the definition of 'return' all late-filed tax

---

[8] In Justice, we expressly did not decide whether the "one-day-late rule" was a correct or an incorrect interpretation of the statute. Id.

7

forms, except for those prepared with the assistance of the IRS under § 6020(a)."); In re McCoy, 666 F.3d 924, 932 (5th Cir. 2012) ("Unless it is filed under a 'safe harbor' provision similar to § 6020(a), a state income tax return that is filed late under the applicable nonbankruptcy state law is not a 'return' for bankruptcy discharge purposes under § 523(a).").

A.

We do not, however, agree that the phrase "applicable filing requirements" unambiguously includes filing deadlines.  Of course, it is plausible that it means filing requirements that are relevant to the taxpayer filing the return at issue.  Such an interpretation would encompass requirements relating to the content of the return, the location it must be filed, and the time by which it must be filed.  This is the interpretation implicitly adopted by our sister circuits.  And it may well be the best reading of the language "applicable filing requirements" when considered in isolation.

But it is not obvious that this is the interpretation Congress intended in drafting the hanging paragraph.  Notably, this understanding of the word "applicable" would add little to the phrase "applicable filing requirements" that the phrase "filing requirements," standing alone, would not already encompass.  We must strive, if possible, to give meaning to every word of the Code.  See, e.g., United States v. Menasche, 348 U.S. 528, 538-39, 75 S. Ct. 513 (1955).  This

8

means we must look for an interpretation of "applicable" that distinguishes the set of "applicable filing requirements" from the set of all "filing requirements."  Any interpretation that does not account for this word risks rendering it superfluous.[9]

The amicus proffers an interpretation of "applicable" that would distinguish between "applicable filing requirements" and other filing requirements.  He notes that the Supreme Court, in interpreting a different section of the Code, has described "applicable" as meaning something different from "all"; it requires an analysis of context and typically means "appropriate, relevant, suitable or fit." Ransom v. FIA Card Servs., N.A., 562 U.S. 61, 69-70 (2011) (citing Webster's Third New International Dictionary 105 (2002); New Oxford American Dictionary 74 (2d ed. 2005); 1 Oxford English Dictionary 575 (2d ed. 1989)).  The amicus argues that the "appropriate, relevant, suitable or fit" filing requirements are those concerning what constitutes a return.  For example, "applicable" filing requirements could refer to considerations like a return's form and contents— aspects of the putative return that have a material bearing on whether or not it can reasonably be described as a "return"—but not to more tangential considerations, like whether it was properly stapled in the upper-left corner, or whether it was filed by the required date.  This approach makes common sense; in a definition of what

---

[9] For example, the Tenth Circuit in Mallo provided a dictionary definition of "applicable" ("[c]apable of being applied; relevant or appropriate"), but went on to define the phrase "applicable filing requirement" as "something that must be done with respect to filing a tax return."  774 F.3d at 1321.  It is not clear that this definition of "applicable filing requirement" adequately grapples with the meaning of the word "applicable."

constitutes a "return," it makes sense that the term "applicable" would relate to matters that are relevant to the determination of whether the document at issue can reasonably be deemed a "return."

We are, therefore, presented with two plausible constructions of the phrase "applicable filing requirements" when considered without context: (1) those filing requirements that apply to a given taxpayer, or (2) those filing requirements that are "relevant" or "appropriate" to the task of defining a "return"—that is, those that deal with what a return is.  Cf. Fahey, 779 F.3d at 5 (agreeing that "applicable filing requirements" "may acquire vagueness at the outer boundaries of its possible application" before concluding that there is no "room for reasonable argument" that a filing deadline "is somehow not a 'filing requirement'").  Statutory context, however, makes clear that only the latter interpretation accords with § 523 as a whole.[10]

### B.

Statutory provisions are not written in isolation and do not operate in isolation, so we cannot read them in isolation.  The plain meaning of a statutory provision derives not only from the "particular statutory language at issue," but also "the language and design of the statute as a whole."  K Mart Corp. v. Cartier,

---

[10] Actually, we believe that this second plausible interpretation of the term "applicable" includes a subset of the first—i.e. those filing requirements that apply to a given taxpayer that are "relevant" or "appropriate" to the task of defining a return.

Inc., 486 U.S. 281, 291 (1988).  As one prominent treatise on statutory interpretation puts it, "[c]ontext is a primary determinant of meaning," and "[t]he entirety of the document thus provides the context for each of its parts."  Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts ("Reading Law") 167 (2012).  We must interpret statutes "harmoniously," reconciling separate sections so that they are compatible and not contradictory.  Reading Law at 180.

Most importantly for present purposes, we must attempt to give effect to every word or provision in § 523.  See Hibbs v. Winn, 542 U.S. 88, 101, 124 S. Ct. 2276 (2004) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."); Reading Law at 174.  "Because legal drafters should not include words that have no effect, courts avoid a reading that renders some words altogether redundant."  Reading Law at 176.[11]  This surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a "clause, sentence, or word . . . superfluous, void, or insignificant."  TRW Inc. v. Andrews, 534 U.S. 19, 31 (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).

---

[11] See also id. ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").

11

The most telling evidence that DOR's reading of the hanging paragraph is incorrect is its proposed interpretation's effect on § 523(a)(1)(B)(ii), which would violate the principles described above.  When Congress in 2005 added the hanging paragraph, it left § 523(a)(1)(B)(ii) unchanged, and left unchanged its clear provision that a late-filed return can qualify for discharge if the return is filed more than two years before the bankruptcy.  Section 523(a)(1)(B)(ii) excludes from dischargeability a tax debt for which a return "was filed or given after the date on which such return . . . was last due, . . . and after two years before the date of the filing of the [bankruptcy] petition."  In other words, a tax debt stemming from a late return cannot be discharged if the debtor's bankruptcy occurred within two years of the date he filed the return.  By negative implication, such a debt <u>can</u> be discharged if there is a delay of at least two years between the filing of the return and the filing of the petition for bankruptcy.

The one-day-late approach would render § 523(a)(1)(B)(ii) a near nullity. Recall that DOR's interpretation of "applicable filing requirements" would deem all late-filed returns not actual returns for purposes of § 523.  But § 523(a)(1)(B)(ii) explicitly permits the discharge of at least some late-filed returns.  There is a clear conflict between DOR's interpretation of the hanging paragraph and § 523(a)(1)(B)(ii).  An untimely (putative) return would apparently <u>never</u>

12

constitute a "return" under § 523(a)(1)(B)(ii).  What, then, is the purpose of the dischargeability exclusion in § 523(a)(1)(B)(ii)?

DOR and the one-day-late approach reply that there still remains a role for § 523(a)(1)(B)(ii)—albeit a small one.  I.R.C. § 6020(a) returns (which are late-filed returns jointly prepared by the IRS and the delinquent taxpayer) are explicitly defined as § 523 "returns" in the hanging paragraph.  So are returns governed by "similar State or local law" (that is, returns jointly prepared by a state tax agency and the taxpayer under a scheme similar to that of § 6020(a)), or returns prepared pursuant to a "written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal."  These categories of "returns," DOR argues, would be dischargeable under § 523, unless barred from discharge by § 523(a)(1)(B)(ii) if a taxpayer's bankruptcy petition was filed within two years of the date these "returns" were filed.  Thus, according to DOR's argument, § 523(a)(1)(B)(ii) is not surplusage because it still bars discharge of <u>some</u> returns.  Our sister circuits have found this argument persuasive.  See <u>Fahey</u>, 779 F.3d at 6; <u>Mallo</u>, 774 F.3d at 1323-24.[12]

We do not agree.  While the IRS has not appeared in this case, it filed its views on this matter in <u>Justice</u>, 817 F.3d at 743 n.5, and in <u>Fahey</u>, 779 F.3d at 6, where it noted that only a "tiny minority" or a "minute" number of returns were

_____

[12] <u>McCoy</u> did not address the conflict between the hanging paragraph and § 523(a)(1)(B)(ii) at all.  <u>See</u> n.14 <u>infra</u>.

13

ever filed under § 6020(a).  Given the atypical nature of a § 6020(a) return, this makes sense.  But again, the Supreme Court has instructed us that the surplusage canon does not only apply when a potential interpretation would leave a statutory provision with <u>no</u> role; it also applies when an interpretation would render a "clause, sentence, or word . . . superfluous, void, or <u>insignificant</u>."  <u>TRW</u>, 534 U.S. at 31, 122 S. Ct. at 449 (internal quotations and citations omitted; emphasis added).

DOR's proposed interpretation would render the dischargeability limitation in § 523(a)(1)(B)(ii) <u>insignificant</u>.  Section 523(a)(1)(B)(ii) would only limit discharge of returns filed under § 6020(a) or a related state or local provision.[13] And it would only bar discharge of such returns of taxpayers with respect to whom bankruptcy was filed within two years of the filing of the late return.  Section 523(a)(1)(B)(ii) would therefore operate only on a subset of an already "minute" set of tax returns.  In all other circumstances, it would be completely irrelevant, despite its facially broad language.  Relegating § 523(a)(1)(B)(ii) to insignificance would run counter to the Supreme Court's consistent refusal to construe statutes "in a manner that renders [them] entirely superfluous in all but the most unusual

---

[13] It is not apparent how many states (or local governments) have mechanisms equivalent to § 6020(a).  Massachusetts does not.  <u>See</u> <u>Perkins v. Mass. Dep't of Revenue</u>, 507 B.R. 45, 53 n.6 (D. Mass. 2014).

14

circumstances." Roberts v. Sea-Land Servs, Inc., 566 U.S. 93, 103, 132 S. Ct. 1350, 1358 (2012).[14]

We think it is deeply implausible that Congress intended § 523(a)(1)(B)(ii) to apply only in such a handful of cases despite no such limitation appearing in that provision itself. It would be a bizarre statute that set forth a broad exclusion for discharge of tax return debts, but limited the application of that exclusion via an opaque and narrow definition of the word "return." It would be even stranger to enact the broad exclusion in § 523(a)(1)(B)(ii), only to later amend the statute, not by changing the text of § 523(a)(1)(B)(ii) itself, but with a different definitional provision that would cabin § 523(a)(1)(B)(ii) into applying only to the "minute" number of § 6020(a) returns. If Congress had intended this result, it could have achieved it in a much less abstruse manner simply by stating in § 523(a)(1)(B)(ii) itself that that section applied only to § 6020(a) returns.[15]

---

[14] We do not find Fahey, Mallo, or McCoy persuasive. In Fahey, the First Circuit discounted the force of the surplusage canon because there remained at least some role for § 523(a)(1)(B)(ii). See 779 F.3d at 6 ("While section 6020(a) may only apply in a small minority of cases, the fact that a late filed section 6020(a) return can still qualify as a "return" for section 523(a) purposes means that the two-year provision still has a role to play if the hanging paragraph's plain meaning controls." (emphasis added)). Accord Mallo, 774 F.3d at 1324. Neither case addresses the fact that the Supreme Court in TRW and Roberts has held that the surplusage canon operates not only when a potential interpretation would leave a statutory provision with no role, but also when it would render the provision insignificant, or operative in only the most unusual cases. Similarly, the Fifth Circuit's decision in McCoy is not persuasive; it does not even recognize the conflict between its interpretation of § 523(a)(*) and the clear provision in § 523(a)(1)(B)(ii) that at least some late-filed returns can qualify for discharge.

[15] See also TRW, 534 U.S. at 31, 122 S. Ct. at 449 (rejecting a proposed interpretation because under that reading "a rule nowhere contained in the text of § 1681p would do the bulk of that

Our understanding of how Congress drafts statutes also accords with the Supreme Court's instructions that we attempt, where possible, to interpret the Bankruptcy Code post-BAPCPA harmoniously with pre-BAPCPA practice. See Hamilton v. Lanning, 560 U.S. 505, 517, 130 S.Ct. 2464, 2473 (2010) ("Pre-BAPCPA bankruptcy practice is telling because we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure."). We do not think it is likely that Congress would significantly curtail the set of dischargeable returns so starkly without a clearer indication that it was indeed intending to do so.

Lastly, we note that our interpretation of the hanging paragraph is in harmony with the principle that "exceptions to discharge should be confined to those plainly expressed." Kawaauhau v. Geiger, 523 U.S. 57, 58, 118 S.Ct. 974, 977 (1998). In addition, we have noted in the past that we should, where possible, construe exceptions to discharge "in favor of the debtor, and recognize that the reasons for denying a discharge must be real and substantial, not merely technical and conjectural." In re Miller, 39 F.3d 301, 304 (11th Cir. 1994) (internal citations and quotations omitted).

---

provision's work, while a proviso accounting for more than half of that text would lie dormant in all but the most unlikely situations").

16

IV.

DOR raises a second argument: that, as applied to Shek's return, the phrase "applicable nonbankruptcy law" refers to Massachusetts tax law, and that Massachusetts tax law defines "return" in part by reference to whether a putative return is timely filed.  The argument proceeds as follows: (1) the applicable nonbankruptcy law is Massachusetts' definition of a "return"; (2) Massachusetts regulation 830 C.M.R. 62C.26.1(2) defines "return" as "a taxpayer's signed declaration of the tax due, if any, properly completed by the taxpayer or the taxpayer's representative on a form prescribed by the Commissioner and duly filed with the Commissioner"; (3) the phrase "duly filed" encompasses a temporal requirement, so that a document is not "duly filed" unless it is filed on time; (4) therefore, the "applicable nonbankruptcy law" defines a "return" as, in part, a timely filing.

This argument fails at step 3.[16]  The parties dispute whether "duly filed" does actually incorporate a timeliness requirement.  DOR argues that "duly filed" means "filed" "in a due manner, _time_, or degree," citing Webster's Third (1961 ed.) (emphasis added), while the amicus points to Black's Law Dictionary, which instead defines "duly" as "[i]n a proper manner; in accordance with legal

---

[16] As noted in Part V n.17 infra, we need not in this opinion define the full scope or boundaries of "applicable nonbankruptcy law."

17

requirements," and argues that the traditional legal adverb for "time sensitivity" would instead be "timely."

This seems to be a close question, and the phrase "duly filed," standing alone, would likely be at least ambiguous. But the remainder of Massachusetts law undermines DOR's position, making clear that Massachusetts still treats late-filed returns as, definitionally speaking, "returns." For example, Massachusetts has a section in its tax code concerning late-filed returns (Ch. 62C, § 33) and a section concerning a taxpayer's complete failure to file a return (Ch. 62C, § 34). If Massachusetts did in fact define a return as, in part, a timely filing, it would only need the latter section, as anyone who filed a return out of time would not, definitionally speaking, have filed a return at all. In the same vein, the section of the code concerning late-filed returns speaks of compounding penalties on a late filer "until the return is filed." See Mass. Gen. Laws Ch. 62C, § 33(a). If Massachusetts defined returns by virtue of timeliness, this section would need to instead state "until the putative return is filed." And, for a third example, Massachusetts regulations require the Commissioner to send a written notification to a person who has not filed his return "requesting that the taxpayer file a proper return." 830 C.M.R. 62C.26.1(13)(c)(1). If a filing could only be a "return" if it met the statutory deadline, the dilatory taxpayer could never file a "proper return."

18

DOR responds that the hanging paragraph's definition of "return" only applies "for purposes of this subsection," 11 U.S.C. § 523(a)(*), and we must therefore construe the definition of "return" "for purposes of evaluating dischargeability, not for purposes of tax law."  This argument makes no sense.  The DOR argument is that our statutory term "applicable nonbankruptcy law" incorporates the definition of a tax return under Massachusetts tax law.  DOR cannot, in the same breath, disavow what Massachusetts tax law actually provides.

We reject DOR's argument that a late-filed return cannot be a "return" under Massachusetts tax law; we conclude that, considering the "duly filed" provision in the context of the whole of the relevant Massachusetts statutes, Massachusetts does not limit its definition of the term "return" only to timely filed returns.

Therefore, we also reject this second argument of DOR.

## V.

Having determined that neither the hanging paragraph nor Massachusetts law defines a "return" by reference to a filing's timeliness, we are left to determine—with respect to Shek's Massachusetts income tax return at issue here— whether to apply the Beard test's definition of a "return" or the Massachusetts

19

definition.  But because the outcome is the same either way, we need not decide that issue.[17]

If we were to apply Massachusetts' definition of a "return"—which we concluded above does not incorporate a timeliness requirement—we would find no basis for holding that Shek's return is not a "return."  Massachusetts regulation 830 C.M.R. 62C.26.1(2) defines "return" as "a taxpayer's signed declaration of the tax due, if any, properly completed by the taxpayer or the taxpayer's representative on a form prescribed by the Commissioner and duly filed with the Commissioner."  There is nothing in the record indicating that any of these requirements has not been met.

And if we were to apply the Beard test's definition of a return, we would also conclude that Shek's return is a "return."  This is because, pursuant to a stipulation of the parties in the bankruptcy court, DOR conceded that Shek satisfied all four prongs of the Beard test, and that Shek's tax return debt would be discharged.

---

[17] In Justice, we noted that both parties to that case, and all courts to have considered the issue, agreed that the phrase "applicable nonbankruptcy law" incorporated the Beard test.  817 F.3d at 743.  But see Fahey, 779 F.3d at 10, and Mallo, 774 F.3d at 1325 (both suggesting that specific filing requirements would trump at least any conflicting application of the Beard test).  In any event, Justice involved a federal income tax return, and therefore did not address the application of state law in a case involving a state income tax return, as here.  As noted in this section, we need not in this case decide whether "applicable nonbankruptcy law," as applied in this case, means only relevant Massachusetts law, or only the Beard test, or some combination thereof.

So under either test, Shek's return is a return for purposes of § 523. We hold that the bankruptcy court's discharge included Shek's tax return debt.

VI.

We conclude that § 523 does not incorporate a mandatory precondition that a tax return must be timely filed to be dischargeable.[18] And we conclude that under Massachusetts tax law, a late-filed tax return does not automatically cease having the status of a "return" merely because it was filed late. Whether or not § 523 incorporates the Beard test or Massachusetts state law, the bankruptcy court's discharge order included Shek's tax debt. The order of the district court is therefore

AFFIRMED.

---

[18] However, the timing of the filing of the return is relevant under the Beard test. See Justice, 817 F.3d at 744.

21