[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12568

_____

JOSÉ RAMÓN LÓPEZ REGUEIRO,

Plaintiff-Appellant,

*versus*

AMERICAN AIRLINES, INC.,
LATAM AIRLINES GROUP, S.A.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23965-JEM

_____

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

JILL PRYOR, Circuit Judge:

In response to the confiscation of private property by Fidel Castro's regime in Cuba, Congress passed the Helms-Burton Act. *See* 22 U.S.C. § 6021 *et seq.* Title III of the Act created a private right of action for United States nationals to sue third parties who trafficked in confiscated property. *Id.* § 6082(a)(1). For over 20 years, Title III remained dormant because its right of action was suspended by Presidential decree. *See id.* § 6085(c)(1)(B) (granting the President the authority to suspend the right to bring an action under Title III). In 2019, the Presidential suspension was lifted, and Title III took effect.

Shortly afterward, José Ramón López Regueiro filed suit under Title III against American Airlines, Inc. He alleged that his father had purchased Cuba's main airport. When Castro came to power, the Cuban government confiscated it. He inherited his father's interest in the airport, he alleged, and American Airlines later trafficked in the airport by operating flights in and out of it. He became a United States citizen after the inheritance.

American Airlines moved to dismiss the lawsuit. It argued that the Helms-Burton Act contains two implicit preconditions that must be satisfied to state a claim. First, the property owner had to be a United States citizen when the property he owned was confiscated. Second, the plaintiff had to be a United States citizen when he acquired an interest in the property. American Airlines asserted that Regueiro failed to state a claim because his father was not a

United States citizen when the Cuban government confiscated the airport and Regueiro became a United States citizen only after he inherited an interest in the property. The district court agreed and dismissed the case.

After careful review, and with the benefit of oral argument, we disagree. Based on the plain language of the statute, we conclude that the district court erred. The Helms-Burton Act does not impose the preconditions American Airlines advances. We thus vacate the district court's order and remand for further proceedings.

## I. BACKGROUND

In this section, we begin with an overview of Title III of the Helms-Burton Act. Next, we turn to the allegations in Regueiro's complaint. We then review this case's procedural history.

Congress found that after Fidel Castro came to power in Cuba in 1959, his government "trampled on the fundamental rights of the Cuban people." 22 U.S.C. § 6081(3)(A). It "confiscated" the property of "millions of [Cuban] citizens," "thousands of United States nationals," and "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States." *Id.* § 6081(3)(B).

In response, Congress passed statutes to protect United States nationals whose property was confiscated by the Cuban government. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 919–20 (11th Cir. 2023). As relevant here, Congress amended the International Claims Settlement Act of 1949 with the Cuban Claims Act of

1964. *Id.* at 920 (citing 22 U.S.C. §§ 1643–1643k). The Cuban Claims Act empowered the Foreign Claims Settlement Commission to certify the validity and value of claims of United States nationals as part of an effort to negotiate settlements to redress property confiscation by the Cuban government. *Id.*; *see* 22 U.S.C. § 1643b(a). A claim could not be certified as valid under the Cuban Claims Act "unless the property on which the claim was based was owned . . . by a national of the United States on the date of the loss." 22 U.S.C. § 1643c(a). Through this claims process, the Foreign Claims Settlement Commission has certified as legitimate over 6,000 claims valued at approximately $1.9 billion. *Garcia-Bengochea*, 57 F.4th at 920. But "Cuba and the United States . . . have never reached a settlement on these claims (or, for that matter, on claims by Cuba against the United States)." *Id.*

About 30 years after passing the Cuban Claims Act, Congress enacted the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021 *et seq.*, known as the Helms-Burton Act, "in an attempt to provide a means of compensation for some of the losses suffered as a result of the Castro regime's actions." *Garcia-Bengochea*, 57 F.4th at 919. Unlike the earlier legislation, which sought to settle claims between the property owner and the Cuban government, the Act provides United States nationals with a private right of action against those who traffic in the confiscated property. 22 U.S.C. § 6081(11). Under the Act's Title III, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." *Id.*

§ 6082(a)(1)(A). A person "traffics" in property if, among other things, he "knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property." *Id*. § 6023(13)(A)(ii).

The Helms-Burton Act also amended the Cuban Claims Act, allowing district courts to refer Title III claims to the Foreign Claims Settlement Commission to determine the "amount and ownership of a claim by a United States national." *Id*. § 1643l. Unlike the Cuban Claims Act, however, this amendment allows the Commission to evaluate the validity of a claim "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id*.

But Title III allows the President of the United States to suspend this right of action. *Id*. § 6085(c)(1)(B). Each President exercised this suspension power from the Act's passage until May 2019, when Title III took effect for the first time, authorizing eligible plaintiffs to file suit. *Garcia-Bengochea*, 57 F.4th at 919–20.

Shortly after Title III took effect, Regueiro filed a complaint against American Airlines.[1] He alleged that his father, José López Vilaboy, purchased Cuba's main domestic and international airport in 1955 through a company known as Compañia de Aeropuertos

---

[1] Regueiro also sued Latam Airlines Group, S.A. The district court administratively closed the matter as to Latam when the company initiated bankruptcy proceedings. Regueiro later dismissed his claim against Latam. As a result, this appeal concerns only Regueiro's claims against American Airlines.

6                    Opinion of the Court                    23-12568

Internacionales, S.A. (CAISA). In 1959, the Cuban government allegedly seized the airport and forced Vilaboy to flee to the United States. After Vilaboy passed away intestate in Florida in 1989, ownership of CAISA passed to Regueiro under Florida law. Regueiro became a United States citizen in 2015.

Regueiro alleged that the Cuban government illegally confiscated the airport, property in which he has an ownership interest. American Airlines trafficked in the property in violation of the Act by operating flights in and out of the airport since at least 1991.

American Airlines filed a motion to dismiss, arguing in part[2] that Regueiro's Helms-Burton Act claim failed because Vilaboy

---

[2] American Airlines also moved to dismiss for lack of standing, lack of personal jurisdiction, and improper venue. The district court rejected these arguments. Because American Airlines does not raise personal jurisdiction or venue on appeal, we do not address them. *See Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("Lack of personal jurisdiction and improper venue, unlike lack of subject matter jurisdiction which requires dismissal on the court's own motion if not raised by the parties, are waivable defects." (footnote omitted)). Although American Airlines did not raise standing on appeal either, we are required to address it as part of our obligation to examine our own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995).

Standing requires that a plaintiff have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a ruling in the plaintiff's favor. *Id.* at 743. In *Garcia-Bengochea*, we considered whether the plaintiff had standing to pursue a similar Helms-Burton Act claim and concluded that he did. 57 F.4th at 922–28. His claim was based on the Cuban government's confiscation of waterfront real property that was later used by two cruise lines. *Id.* at 921–22. We held that, assuming his claim had merit as we must on a standing inquiry, the plaintiff had a concrete and personalized injury—the confiscation

23-12568                    Opinion of the Court                    7

was not a United States citizen when the airport was confiscated and Regueiro was not a United States citizen when he inherited his interest in the airport. Relying on the text of the Act, it maintained that Regueiro's claim failed because his father was not a "United States national who own[ed] the claim" to the airport when it was confiscated by the Cuban government. 22 U.S.C. § 6082(a)(1)(A). Separately, it contended that Regueiro's claim failed because the Act requires that, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996," and Regueiro was not a citizen when he inherited his interest in the airport. *Id.* § 6082(a)(4)(B). American Airlines further contended that Regueiro failed to state a claim under the Act because he had no ownership interest in the airport. It argued that, under corporate-law principles, Regueiro owned at most shares in CAISA, not an ownership interest in the airport itself.

---

of property in which he had an ownership interest and the cruise lines' subsequent use of the property without compensating him. *Id.* at 923. His injury was traceable to the defendant cruise lines because of their use of the property. *Id.* at 926. And it was redressable because a favorable ruling by a court would have compensated the plaintiff for the cruise lines' use of the property. *Id.* at 927.

This same analysis applies to Regueiro's claim. All we need to do is substitute the names of the plaintiff and the defendant and the description of the property. We thus are satisfied that he has standing.

A magistrate judge recommended that the district court grant the motion to dismiss. The magistrate judge agreed with American Airlines that the Helms-Burton Act required United States citizenship both at the time of confiscation and of acquisition of the property. The magistrate judge thus recommended that the district court dismiss the case because Vilaboy was not a United States citizen when the airport was confiscated and Regueiro was not a citizen when he acquired his claim to the airport or before the Act's effective date. But the magistrate judge recommended that the district court reject American Airlines's corporate ownership challenge because it involved factual issues best resolved at summary judgment. The district court adopted the recommendation, dismissing the case because the airport was not confiscated from a United States national and Regueiro was not a United States national when he acquired an interest in the airport. The district court did not resolve the corporate ownership question.

## II.  STANDARD OF REVIEW

This Court reviews *de novo* a district court's statutory interpretation. *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 869 (11th Cir. 2022). We also review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Fox v. Gaines*, 4 F.4th 1293, 1295 (11th Cir. 2021).

### III.  DISCUSSION

We address two issues under the Helms-Burton Act. We begin with the citizenship requirement of the Act. This issue turns on whether the district court erred in dismissing Regueiro's complaint for failure to state a claim under the Helms-Burton Act because (1) Regueiro's father was not a United States citizen when his property was confiscated and (2) Regueiro was not a citizen when he inherited an interest in the property. We conclude that the district court erred because the plain text of the Helms-Burton Act makes clear that the statute does not require the owner of the property to be a United States citizen when the property was seized or the plaintiff to be a citizen when he acquired an interest in the property. Because the complaint alleged that Regueiro had an interest in the confiscated property and was a United States citizen when he filed suit, he stated a claim.

We then turn to the ownership requirement of the Act. American Airlines argues that we should affirm the district court's dismissal order on the alternate ground that Regueiro owned only shares in a company that owned the airport; he did not own the airport itself. But this argument is foreclosed by our recent decision holding that the Helms-Burton Act allows shareholders to recover from defendants who unlawfully traffic in corporate assets. *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 949–50 (11th Cir. 2025). We therefore reject this argument as well.

## A.    The Helms-Burton Act's Citizenship Requirement

Our discussion of the Helms-Burton Act's citizenship requirement proceeds in two parts. First, we review the statute's text and conclude that it unambiguously does not require United States citizenship when the property was confiscated or when the plaintiff acquired an interest in the property. Second, we apply this plain meaning to Regueiro's complaint and conclude that he stated a claim for relief.

### 1.    The Text of the Helms-Burton Act

We begin with the text of the statute. *Garcia-Bengochea*, 57 F.4th at 930. "If the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (internal quotation marks omitted). We remain mindful that a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1088 (11th Cir. 2018) (internal quotation marks omitted), *aff'd*, 587 U.S. 262 (2019).

The Helms-Burton Act provides United States nationals with a private right of action meant to deny third parties profits from property confiscated by the Cuban government. *See* 22 U.S.C. § 6081(11). Title III of the Act states that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States

national who owns the claim to such property." *Id.* § 6082(a)(1)(A). If the property was confiscated before March 12, 1996, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquire[d] ownership of the claim before" that date. *Id.* § 6082(a)(4)(B). In addition, the trafficking of the property must have occurred after November 1, 1996. *See id.* §§ 6082(a), 6085(a). The elements of a Title III claim thus include: (1) the Cuban government confiscated property on or after January 1, 1959; (2) a third party trafficked in the property after November 1, 1996; (3) the plaintiff is a United States national; (4) the plaintiff "owns an interest (i.e., has a claim)" in the confiscated and trafficked-in property; and (5) if the property was confiscated before March 12, 1996, the plaintiff acquired his interest in the property before that date. *Garcia-Bengochea*, 57 F.4th at 929–30.

Besides creating this cause of action, the Helms-Burton Act amended the Cuban Claims Act to allow the Foreign Claims Settlement Commission to validate the ownership and value of Title III claims. 22 U.S.C. § 1643l. Although the Cuban Claims Act enables the Commission to determine the validity of claims related to property taken by the Cuban government, it limits the Commission's authority to validate these claims "unless the property on which the claim was based was owned wholly or partially, directly or indirectly by a national of the United States on the date of the loss." *Id.* § 1643c(a). But the Helms-Burton Act allows district courts to refer Title III claims to the Commission "for fact-finding purposes" regardless of "whether or not the United States national

qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id.* § 1643l.

We must read Title III of the Helms-Burton Act and this amendment to the Cuban Claims Act together. Although they appear in separate code sections as enacted, both are part of the Helms-Burton Act. *Compare id.* §§ 1643l, 6082(a)(1)(A) *with* Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, Pub. L. No. 104–114, §§ 302–03, 110 Stat. 785, 815, 820. We thus interpret the plain meaning of the statute by reading them together. *See In re Shek*, 947 F.3d 770, 776–77 (11th Cir. 2020) ("The plain meaning of a statutory provision derives not only from the 'particular statutory language at issue,' but also 'the language and design of the statute as a whole.'" (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

Beginning with when the Cuban government confiscated the property, the Helms-Burton Act read as a whole unambiguously does not require the property in question to have been owned by a United States national when the Cuban government confiscated it. Instead, Title III provides a cause of action to "any United States national," 22 U.S.C. § 6082(a)(1)(A), defining "United States national" as "any United States citizen," *id.* § 6023(15)(A). And the amendment permitting validation of Title III claims by the Foreign Claims Settlement Commission confirms that a United States national can bring a Title III claim even if the plaintiff was not a United States national at the time the property was confiscated. *Id.* § 1643l. After all, if Title III required the property at issue

to be confiscated from a United States national, it would make no sense to allow district courts to refer Title III claims to the Foreign Claims Settlement Commission "for fact-finding purposes" "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id.*

Turning to when the plaintiff acquired an interest in the property, the Act likewise does not require the plaintiff to have been a United States national at that time. The Act states that, if the property was confiscated before March 12, 1996, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim" by that date. *Id.* § 6082(a)(4)(B). American Airlines argues that the phrase "such national acquires" indicates that Congress limited Title III claims to those where were already citizens when they acquired their interest in the confiscated property. But the Act's text encompasses plaintiffs who acquired the property before becoming United States citizens. Once again, § 1643l provides persuasive evidence. In authorizing district courts to hear Title III claims "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba," this section strongly suggests that the Helms-Burton Act includes claims by plaintiffs who acquired the property before they were United States citizens. Consider a typical Helms-Burton Act plaintiff—a Cuban citizen whose property was seized by the Cuban government who later became a naturalized citizen of the United States. *See, e.g.*, *Fernandez*, 135 F.4th at 945 ("After the

Castro regime came to power in 1959, it confiscated all the property that the family owned. . . . Soon after, Fernandez and her siblings fled Cuba and became U.S. citizens."). By allowing a plaintiff to bring a Title III claim even if she was not a United States citizen when the Cuban government confiscated her property, it is evident that the Helms-Burton Act also covers plaintiffs who acquired their property before becoming United States citizens. Indeed, "[f]or many Cubans who had property confiscated by the Cuban government, and who later became U.S. nationals," the Act "was the only remedy available to obtain monetary compensation." *Garcia-Bengochea*, 57 F.4th at 932 (Jordan, J., concurring). Section 1643l thus confirms that the temporal limitations in the Helms-Burton Act concern when the plaintiff acquired an interest in the property rather than when the plaintiff became a United States citizen.

Furthermore, American Airlines's reading of the statute contradicts the Helms-Burton Act's definition of "United States national." The Act defines "United States national" in relevant part as "any United States citizen." 22 U.S.C. § 6023(15)(A). "As we have often had occasion to say, when interpreting a statute, 'any' means 'all.'" *Pinares v. United Techs. Corp.*, 973 F.3d 1254, 1262 (11th Cir. 2020) (internal quotation marks omitted). "Typically, when Congress intends to restrict the scope of a particular word, it introduces that word with a limiting adjective or adverb." *United States v. Caniff*, 955 F.3d 1183, 1190 (11th Cir. 2020). Here, "Congress's use of 'any'" in the Helms-Burton Act instructs us to give the phrase "United States national" "the broadest interpretation that it will reasonably bear." *Id.* The broad term "any United States national"

therefore includes those United States nationals who became citizens after acquiring the property in question. American Airlines's reading of the phrase "such national acquires" thus conflicts with the Act's broad definition of "United States national."

The Helms-Burton Act's text therefore provides a cause of action to "any United States national who owns the claim to" "property which was confiscated by the Cuban Government," 22 U.S.C. § 6082(a)(1)(A), "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba," *id.* § 1643l. The Act further broadly defines United States national without any limitation based on the when the plaintiff became a citizen. Requiring that the plaintiff was a United States national when the property was confiscated or when the plaintiff gained an interest in the property would therefore contradict the plain language of the statute.

We recognize that, in interpreting the Act as imposing preconditions on Title III's cause of action, the district court relied on dicta in a footnote in this Court's decision in *Glen v. Club Méditerranée, S.A.*, which stated that "[w]e need not decide . . . [b]ut we do note that the . . . property at issue in this litigation was owned by Cuban nationals at the time of its expropriation and thus may not be the proper subject of a trafficking claim under the statute." 450 F.3d 1251, 1255 n.3 (11th Cir. 2006). In *Glen,* we made this observation based on the legislative findings in Title III. *Id.*; *see* 22 U.S.C. § 6081(5) (finding that property was "confiscated from United States nationals"), (6)(B) (finding that "this 'trafficking' in

confiscated property . . . undermines the foreign policy of the United States . . . to protect the claims of United States nationals"), (11) (finding that the cause of action created by the Act was meant to benefit United States nationals by denying profits to traffickers). For starters, the footnote says "may not" instead of "is not." But even if the footnote purported to answer the question the Court posed, it would be dicta and not binding on us. More fundamentally, because we conclude that the statute unambiguously does not require the property owner to have been a United States national when the property was confiscated or the plaintiff to have been a United States national when the property was acquired, the findings and purpose provisions of the statute do not alter our analysis. *See Georgia v. President of the United States*, 46 F.4th 1283, 1300 (11th Cir. 2022) ("[P]urpose provisions can suggest only which permissible meanings of the enactment should be preferred when the text is otherwise ambiguous." (internal quotation marks omitted)).

Because we conclude that the meaning of the Helms-Burton Act is plain, we "must enforce it according to its terms." *King*, 576 U.S. at 486. We therefore conclude that Title III provides a right of action to any United States citizen—even if the property owner was not a citizen when the Cuban government seized the property at issue and the plaintiff was not a citizen when he acquired an interest in the property.

2.    *Regueiro's Complaint*

Having concluded that the Helms-Burton Act does not require the property owner to have been a United States national

when the property at issue was confiscated or the plaintiff to have been a United States national when the property was acquired, we now apply the plain language of the Act to Regueiro's complaint. Taking his allegations of fact as true, as we do at the motion-to-dismiss stage, we know that Regueiro's father, Vilaboy, purchased the airport through his company, CAISA. In 1959, the Cuban government confiscated the airport. Vilaboy and his family then fled Cuba for the United States. When Vilaboy passed away on March 2, 1989, ownership of CAISA passed to Regueiro. Regueiro became a United States national in 2015. American Airlines has operated flights to and from the airport since 1991 to the present.

Regueiro has pleaded the elements of a Title III claim: (1) the Cuban government confiscated the airport on or after January 1, 1959; (2) American Airlines trafficked in the airport after November 1, 1996; (3) Regueiro was a United States national when he sued; (4) Regueiro "owns an interest (i.e., has a claim)" in the airport through his CAISA shares; and (5) Regueiro acquired his interest in the airport before March 12, 1996. *See Garcia-Bengochea*, 57 F.4th at 929–30. The district court therefore erred in dismissing his claim; we vacate the dismissal.

## B.    The Ownership Requirement of the Helms-Burton Act

American Airlines nevertheless argues that we should affirm the district court's ruling on an alternative ground: that Regueiro failed to state a claim for relief because he does not own an interest in the airport but rather shares in CAISA, the company that owns the airport. According to American Airlines, Regueiro cannot

assert a claim for confiscated property under the Helms-Burton Act because Cuba confiscated the airport, not his ownership interest in CAISA. It argues that corporate law principles dictate this result because a corporation's shareholders do not own its assets. These principles are applicable, it argues, because the Congress passed the Act with these corporate formalities in mind.

But we recently rejected a similar argument in another Helms-Burton Act case. In *Fernandez v. Seaboard Marine Ltd.*, the plaintiffs owned shares in their family's companies, which owned real property and port facilities in Cuba. 135 F.4th at 945. The Castro regime confiscated both the plaintiffs' shares and the property and ports the companies owned. *Id.* The plaintiffs brought a Title III claim alleging that Seaboard later trafficked in the property by making deliveries to the confiscated ports and transporting those deliveries across the confiscated real property. *Id.* at 946. At summary judgment, Seaboard argued that the plaintiffs did not own the property confiscated by the Cuban government because their family's companies owned it, and the plaintiffs owned only shares in the companies. *Id.* The district court granted Seaboard summary judgment because it concluded that it had not trafficked in any confiscated property. *Id.* at 947. But it also concluded that shareholders could sue under the Helms-Burton Act based on the confiscation of corporate property. *Id.* On appeal, Seaboard again argued that the plaintiffs, as shareholders, did not own the confiscated property. We concluded that a single plaintiff had shown both that she had an interest in the property and that Seaboard had trafficked in it. *Id.* at 949–50, 959. We held that the Helms-Burton Act "operates

to protect those who had an interest in confiscated property, including shareholders, even if they did not own the property itself." *Id.* at 949. We reversed the summary judgment against the one plaintiff who "present[ed] enough evidence that she had a stake in the confiscated companies to survive summary judgment." *Id.* at 950.

American Airlines raised the corporate ownership issue before the district court. But because the district court dismissed Regueiro's claim based on its erroneous interpretation of the Helms-Burton Act, it did not decide this question. As we review *de novo* whether a complaint states a claim for relief, we may "in our discretion resolve questions" about whether the plaintiff stated a claim even if these questions were "not addressed by the district court." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991). Our opinion in *Fernandez* establishes that that Regueiro can bring a Title III claim based on an ownership interest in CAISA, the company that owns the airport. Regueiro alleged that the Cuban government confiscated the airport and that CAISA owned the airport. He further alleged that he inherited his father's shares in CAISA. At the motion to dismiss stage, these allegations of ownership are sufficient to state a claim.

## IV. CONCLUSION

The district court's order dismissing the case is vacated, and the case is remanded for further proceedings consistent with this opinion.

**VACATED AND REMANDED**.